IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CONSTRUCTION EQUIPMENT COMPANY, an Oregon corporation; and ROGER G. SMITH, a resident of Oregon, | 96-CV-1574-AC |
| | ORDER |
| Plaintiffs, | |
| v. | |
| POWERSCREEN INTERNATIONAL DISTRIBUTION, Ltd., a corporation of Northern Ireland; POWERSCREEN OF AMERICA, INC., a Kentucky corporation; POWERSCREEN OF WASHINGTON, INC., a Washington corporation; and POWERSCREEN OF NORTHERN CALIFORNIA, a California corporation, | |
| Defendants. | |

BROWN, Judge.

Magistrate Judge James V. Acosta issued Findings and

Recommendation (#608) on October 20, 2008, in which he recommends

1- ORDER

the Court deny Defendants' Rule 60(b) Motion (#593) to Stay
Enforcement of Permanent Injunction.  Defendants filed timely
Objections to the Findings and Recommendation.  The matter is now
before this Court pursuant to 28 U.S.C. § 636(b)(1) and Federal
Rule of Civil Procedure 72(b).

When any party objects to any portion of the Magistrate
Judge's Findings and Recommendation, the district court must make
a *de novo* determination of that portion of the Magistrate Judge's
report.  28 U.S.C. § 636(b)(1).  *See also United States v. Reyna-
Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*); *United
States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988).

**I.   Background**

Plaintiff Construction Equipment Company (CEC) is the owner
of Patent No. 5,234,564 ('564 Patent).  In 1996 CEC and Plaintiff
Roger G. Smith, Chairman of the Board of CEC and inventor of the
patented device, filed this action against various Defendants
alleging they were selling a machine that infringed on the '564
Patent.

On February 6, 1997, Magistrate Judge Donald C. Ashmanskas[1]
found the '564 Patent is not invalid and rejected Defendants'
claims that the '564 Patent was anticipated and that the '564
Patent is obvious based on prior art.  Magistrate Judge

---

[1] On November 25, 1996, all parties consented to proceeding
in this matter before a Magistrate Judge (#13).

2- ORDER

Ashmanskas concluded Defendants' device infringes the '564 Patent.  Magistrate Judge Ashmanskas issued a preliminary injunction prohibiting Defendants from manufacturing, offering for sale, selling, or using any equipment that infringes any of the claims of the '564 Patent.

Magistrate Judge Ashmanskas addressed the issues of prior art again in his June 11, 1998, Opinion and Order and found Claims One and Two of the '564 Patent are not invalid as anticipated by prior art and that Claims Five, Seven, and Eight are not invalid as obvious.

After a five-day jury trial, the jury rendered a Verdict in favor of Plaintiffs.  On July 27, 1999, Magistrate Judge Ashmanskas entered a Final Judgment that Claims One, Two, and Five through Eight are not invalid, are enforceable, and were willfully infringed by Defendants.  Magistrate Judge Ashmanskas permanently enjoined Defendants from infringing Claims One, Two, and Five through Eight of the '564 Patent.  Defendants appealed, and the Federal Circuit affirmed on September 13, 2000.

On January 26, 2007, Defendants filed a request for reexamination of the '564 Patent with the Patent and Trademark Office (PTO) and asserted the '564 Patent is invalid based on prior art not considered by the PTO at the time of its original examination of the '564 Patent.

On January 10, 2008, the PTO rejected Claims One, Two, and

3- ORDER

Five through Eight of the '564 Patent.  On May 9, 2008,
Plaintiffs appealed the PTO ruling to the Board of Patent Appeals
and Interferences (Board).  Plaintiffs' appeal is still pending.

On August 19, 2008, Defendants filed a Motion to Stay
Enforcement of Permanent Injunction based on the January 10,
2008, ruling of the PTO.

As noted, Magistrate Judge Acosta[2] recommends denying
Defendants' Motion.  Defendants filed timely Objections asserting
(1) Magistrate Judge Acosta applied an incorrect legal standard;
(2) equity demands a stay of the permanent injunction; (3) a
significant change in circumstances requires a stay of the
permanent injunction; and (4) *eBay, Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006), constitutes a significant change in law that
requires a stay of the permanent injunction.

## II.  Appropriate legal standard.

As Magistrate Judge Acosta properly noted, relief under
Federal Rule of Civil Procedure 60(b)(5) is appropriate when

---

[2] On September 3, 2008, this matter was reassigned from
Magistrate Judge Ashmankas to Magistrate Judge Acosta.  On
October 8, 2008, Magistrate Judge Acosta issued an Order in which
he directed the parties in this matter to inform him of "their
decision regarding proceeding to conclusion of this matter before
a US Magistrate Judge."  All parties did not file a second
consent to proceed before a Magistrate Judge.  Accordingly,
Magistrate Judge Acosta issued a Findings and Recommendation and
referred it to this Court.  Pursuant to 28 U.S.C. § 636(c)(4),
this Court finds good cause for the procedure Magistrate Judge
Acosta offered to the parties upon his assignment to this matter.
The Court, therefore, reviews this Findings and Recommendation
accordingly.

4- ORDER

"'the party seeking relief from an injunction . . . [meets its initial burden by showing] a significant change either in factual conditions or in law.'"  *See Flores v. Ariz.*, 516 F.3d 1140, 1163 (9th Cir. 2008)(quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).  Although Defendants do not assert the *Flores* standard is inappropriate, they contend Magistrate Judge Acosta improperly applied the standard because he "impose[d] . . . unnecessarily strict and inappropriate, standards on [Defendants'] present motion."  Specifically, Defendants assert Magistrate Judge Acosta interpreted the *Flores* standard to allow modifications under Rule 60(b)(5) *only if* certain factors are present even though the *Flores* court merely held modifications under Rule 60(b)(5) *may be* warranted if certain factors are present.

Defendants also assert Magistrate Judge Acosta erred when he applied the standard set forth in *Federal Deposit Insurance Corporation v. Former Officers and Directors of Metropolitan Bank*, 705 F. Supp. 505 (D. Or. 1987), because that standard was overruled in *Bellevue Manor Associates v. United States*, 165 F.3d 1249, 1254-57 (9th Cir. 1999).

## A.   *Flores* standard.

Magistrate Judge Acosta found when a party has established the existence of a significant change in either factual conditions or in law,

relief is appropriate *only if*:  1) the changes

> make compliance with the injunction "substantially
> more onerous;" 2) the injunction "proves to be
> unworkable because of unforeseen obstacles," or
> 3) enforcement of the injunction "would be
> detrimental to the public interest."

Findings and Recommendation at 3 (quoting *Flores*, 516 F.3d at 1163)(emphasis added). As noted, Defendants, relying on *Flores,* contend modifications under Rule 60(b))(5) "***may be*** warranted" if one of the above factors is present rather than "***only if***." The Court agrees "may be warranted" is the appropriate standard when a party establishes one of the above factors is present. *See Flores*, 516 F.3d at 1163. Here, however, Magistrate Judge Acosta considered the factors listed; concluded those factors are not present in this case; and, therefore, recommended the Court, in the exercise of its discretion, deny Defendants' Motion. Defendants have not shown how the application of the "may be" standard would change the Magistrate Judge's analysis.

**B.    Reliance on *Federal Deposit Insurance Company* standard.**

As noted, Defendants also assert Magistrate Judge Acosta improperly relied on the standard set out in *Federal Deposit* on the ground that the standard set out in *Federal Deposit* was overruled by *Bellevue*. Plaintiffs, in turn, dispute the standards in *Federal Deposit* were overruled.

Magistrate Judge Acosta noted relief should only be granted under Rule 60(b)(5) as follows:

> While the language of either [Rule 60(b)(5) or

6- ORDER

(6)] is broad, neither presents the court with a "standardless residual discretionary power to set aside judgments. . . ."  Instead it is settled that such relief is extraordinary and may be granted only upon a showing of "exceptional circumstances."  Thus a party seeking such relief must bear a heavy burden of showing circumstances so changed that "dangers, once substantial, have become attenuated to a shadow," and that, absent such relief an "extreme" and "unexpected" hardship will result.  We think a healthy respect for the finality of judgments demands no less.  *Federal Deposit Ins. Corp. v. Former Officers and Directors of Metro Bank*, 705 F. Supp. 505, 511 (D. Or. 1987)(citing *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)(citations omitted).

Findings and Recommendation at 4.  In *Bellevue Manor*, the Ninth Circuit explicitly overruled the "three-part test that a party must meet to gain relief under . . . Rule 60(b)(5)" that was announced in *Transgo Incorporated v. Ajac Transmission Parts Corporation*, 911 F.2d 363, 365 (9th Cir. 1990).  *Bellevue*, 165 F.3d at 1256.  The *Transgo* test required a party to establish

(1) a substantial change in circumstances or law since the order was entered;

(2) extreme and unexpected hardship in compliance with the order; and

(3) a good reason why the court should modify the order.

*Id*. at 1254.  The Ninth Circuit concluded in *Bellevue* that the "Supreme Court's most recent decision in *Agostini v. Felton*, 521 U.S. 203 (1997) support[s] the implied abrogation of *Transgo* and the adoption of a more flexible standard for evaluating motions . . . [under] Rule 60(b)(5)."  *Id*. at 1256.  Plaintiffs, however,

7– ORDER

point out in their Response to Defendants' Objections that the court in *Federal Deposit* did not rely on the standards set out in *Transgo* but instead relied on the standards set out in *Mayberry v. Maroney*, a Third Circuit case that has not been overruled by the Third Circuit.  According to Plaintiffs, therefore, *Bellevue* did not overrule *Federal Deposit*.

After reviewing the Findings and Recommendation and the relevant law, the Court concludes Magistrate Judge Acosta applied the proper standard as set out in *Agostini* even though he noted the *Federal Deposit* case.  Accordingly, the Court finds Magistrate Judge Acosta applied the correct legal standard.

**III. Equitable stay of permanent injunction.**

Defendants contend Magistrate Judge Acosta erred when he failed to conclude equity demands a stay of the permanent injunction in this matter.  The Court notes Defendants raised the same argument in their Motion and Reply, and Magistrate Judge Acosta explicitly addressed that argument in his Findings and Recommendation.  Nevertheless, Defendants contend Magistrate Judge Acosta did not sufficiently consider the "basic fairness of granting [Defendants'] motion."  Defendants assert they "will be irreparably harmed [without a stay] during a time when the patent which forms the very basis of the injunction is invalid. . . . On the other hand, staying the permanent injunction does not harm CEC [because it can be] readily compensated in the unlikely event

it overcomes the PTO's invalidity determination on appeal."

Magistrate Judge Acosta analyzed Defendants' contention that the decision of the PTO renders the '564 Patent invalid and noted "[t]he PTO's rejection of the relevant claims is only the first step to establishing that the Patent is no longer enforceable." Findings and Recommendation at 5. Magistrate Judge Acosta noted Defendants relied on *Standard Havens Products v. Gencor Industries, Incorporated*, No. 93-1208, 1993 WL 172432 (Fed. Cir. May 21, 1993), a 1993 unpublished Federal Circuit case that, pursuant to Federal Circuit Rule 32.1, has no binding or precedential effect. Nevertheless, Magistrate Judge Acosta analyzed *Standard Havens* and concluded it was distinguishable. Even if *Standard Havens* were not distinguishable, Magistrate Judge Acosta found it supported a finding that staying the permanent injunction in this matter is not appropriate. In particular, Magistrate Judge Acosta noted the Federal Circuit in its opinion in *Standard Havens* after the appeal following remand held a stay of the appellate proceedings was not appropriate even though the PTO had rejected certain claims of the patent on reexamination because

> the [PTO's] May 10, 1991 reexamination decision
> . . . rejecting the subject claims is subject to
> judicial review. 35 U.S.C. §§ 141, 145 (1988).
> In that sense, it is not a final adjudication of
> the matter. *See* 35 U.S.C. § 307(a) (1988)("In a
> reexamination proceeding . . . when the time for
> appeal has expired or any appeal proceeding has
> terminated, the Commissioner will issue and

9- ORDER

publish a certificate canceling any claim of the
patent finally determined to be unpatentable
. . . .").  Second, Standard Havens stated in its
supplemental brief that it intends to institute a
civil action in the district court under 35 U.S.C.
§ 145 challenging the [PTO's] adverse reexam-
ination decision.  Hence, it may be many months
before the reexamination matter is finally
adjudicated.  Finally, we note that the [PTO's]
reexamination proceeding considering patentability
and the district court's infringement suit
considering validity are distinct proceedings,
with different records and different standards of
proof.  *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422,
1427 (Fed. Cir. 1988)(citing *In re Etter*, 756 F.2d
852, 856 (Fed. Cir. 1985).

953 F.2d 1360, 1366 n.2 (Fed. Cir. 1991).

In their Objections, Defendants rely on two cases that they
did not argue before Magistrate Judge Acosta to support their
assertion that equity demands a stay in this matter:  *Life
Technologies, Inc. v. Promega Corp.*, 189 F.R.D. 334 (D. Md.
1999), and *Dusa Pharmaceuticals, Inc. v. River's Edge
Pharmaceuticals, LLC*, No. 06-1843, 2007 WL 748448 (D.N.J. Mar. 7,
2007).  These cases, however, are distinguishable from this
matter.

In *Promega Corp.*, the court permanently enjoined the
defendant from infringing Patent No. 5,244,797 ('797 Patent).
189 F.R.D. at 335.  In a later case *(Life Technologies, Inc. v.
Clontech Laboratories, Inc.)* that did not involve the defendant,
the court held the '797 Patent was unenforceable due to
inequitable conduct.  *Id*.  In *Promega Corp.*, the defendant moved
for relief from the permanent injunction under Rule 60(b)(5)

10- ORDER

based on the court's ruling of unforceability of the '797 Patent in *Clontech*.  *Id*.  The court granted the defendant's motion on the ground that the permanent injunction was no longer equitable because other companies could practice the '797 Patent based on the court's ruling in *Clontech*, but the defendant was still prohibited from doing so under the permanent injunction.  *Id*. at 339.  Because there has not been a final adjudication of the validity of the '564 Patent in this case, however, the Court has not found the '564 Patent to be unenforceable.  In fact, the only ruling regarding the '564 Patent in this Court is the '564 Patent is not invalid.

In *Dusa Pharmaceuticals*, the court issued a preliminary injunction enjoining the defendant from manufacturing, selling, or importing its allegedly infringing products.  2007 WL 748448, at *1.  While litigation was pending, the defendant sought reexamination of the patent.  *Id*., at *2.  The Board of Patent Appeals and Interferences granted the request and issued an "Office Action" rejecting all of the claims of the patent.  *Id*. The defendant then moved to dissolve the preliminary injunction, and the court granted the defendants' motion.  *Id*., at *5. Because *Dusa* involved a preliminary injunction rather than a permanent injunction, and the showing required for a preliminary injunction is less rigorous than that for a permanent injunction, the defendant in *Dusa* was only required to establish changed

11- ORDER

circumstances rather than a *significant* change in circumstances. In addition, the defendant in *Dusa* established the plaintiffs' likelihood of success on the merits had decreased. Here the issue of likelihood of success on the merits is irrelevant because the matter has already been tried and a Judgment has been entered. Accordingly, the Court does not find *Dusa* persuasive under the facts of this case.

Finally, the Court notes Defendants assert they will be irreparably harmed if a stay is not entered because the PTO found claims of the '564 Patent are invalid, and, therefore, Defendants allegedly are "the only competitor[s] that cannot practice the invention claimed in the '564 Patent." This argument is unpersuasive because the decision of the PTO is not final and the '564 Patent cannot be considered invalid under 35 U.S.C. § 282 until pending appeals are complete. Accordingly, no competitors can practice the claimed invention without risk of violating Plaintiffs' patent at this time. As to Defendants' assertion Plaintiffs will not be harmed by a stay, Defendants fail to explain why Plaintiffs will be any less harmed by the stay than they would have been if the Court had not issued the permanent injunction in the first place.

In summary, this Court has considered Defendants' Objections as to the equity of a stay of the permanent injunction and concludes they do not provide a basis to modify the Findings and

12- ORDER

Recommendation as to this issue.  The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in Magistrate Judge Acosta's Findings and Recommendation as to the equity issue.

**IV.  Significant change in factual conditions.**

In their Objections, Defendants reiterate the argument asserted in their Motion and Reply that the PTO's rejection of the '564 Patent claims constitutes a significant change in the factual conditions on which the permanent injunction was based, and, therefore, the Court should grant Defendants' Motion to Stay.

As noted, Magistrate Judge Acosta found, and this Court agrees, the PTO's rejection of the relevant claims of the '564 Patent is only the first step in establishing whether the '564 Patent is enforceable.  On that basis, Magistrate Judge Acosta concluded the PTO's rejection does not constitute a significant change in the factual conditions sufficient to require a stay of the permanent injunction.

This Court has considered Defendants' Objection as to the effect of the PTO's decision and concludes it does not provide a sufficient basis to modify the Findings and Recommendation as to this issue.  The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in Magistrate Judge Acosta's Findings and Recommendation as to the issue of a

significant change in circumstances.

**V.    Effect of *eBay*.**

In their Reply, Defendants asserted "federal patent law has changed since issuance of the permanent injunction in this case such that the injunction against [Defendants] may not have been an appropriate remedy under present law."  Defendants note in *eBay,* the Supreme Court abrogated the "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances."  547 U.S. at 393.  The Court set out a four-factor test that must be met before a court can grant a permanent injunction:

> A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

*Id*. at 391.

Defendants asserted in their Reply that "the Court [here] did not have the benefit of *eBay* when issuing the permanent injunction against [Defendants]. . . .  As such, the permanent injunction may presently be impermissible under federal law."

Magistrate Judge Acosta addressed this argument and concluded even though Magistrate Judge Ashmanskas did not have

14- ORDER

the benefit of *eBay* when he granted Plaintiffs' Motion for Permanent Injunction, he considered the threat of irreparable harm, the balance of hardships, and that Plaintiffs would irrevocably suffer the loss of customer contacts and goodwill in addition to monetary losses and, in the end, concluded those factors favored Plaintiffs.  Magistrate Judge Acosta, therefore, found the initial decision to issue a permanent injunction in this matter was not impermissible under the law at that time nor later under *eBay*.  This Court agrees and, in the exercise of its discretion,  finds *eBay* does not present such a significant change in the law as to warrant a stay of the permanent injunction at this stage.

In summary, this Court has considered Defendants' Objection as to the effect of *eBay* and concludes it does not provide a basis to modify the Findings and Recommendation as to this issue at this time.  The Court also has reviewed the pertinent portions of the record *de novo* and does not find any error in Magistrate Judge Acosta's Findings and Recommendation as to the issue of a significant change in the law.


## CONCLUSION

The Court **ADOPTS** Magistrate Judge Acosta's Findings and Recommendation (#607) and, therefore, **DENIES** Defendants' Rule


15- ORDER

60(b) Motion (#593) to Stay Enforcement of Permanent Injunction.

IT IS SO ORDERED.

DATED this 19th day of February, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

16- ORDER